Helms, Jackson and Maddox to enter into a contract with Policy Studies Inc., or some other "comparable entity." The 2003 Agreement does NOT allow the defendants to make the choice of the entity to update the child support schedule.

196. Defendant Helms, acting alone, is unqualified to chose a vendor to update the child support schedule.

197. The choice of entities such as Policy Studies, Inc., or "some comparable entity" should have been made in a Committee meeting, scheduled within the three (3) months from 25 September 2003, as set forth in the 2003 Agreement, ¶4(a).

198. After the entity is chosen by the Committee according to the 2003 Agreement, ¶4(a) then the Defendants issue the Contract to update the child support schedule according to the 2003 Agreement, ¶4(b).

199. The 2003 Agreement requires Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox to include Blackston and Barber in selecting venders to update the child support schedule.

200. Plaintiffs Blackston and Barber understood during the 2003 settlement negotiations that Blackston and Barber would be included in selecting the vendor to update Alabama's child support guidelines.

201. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox did not include or contact Plaintiffs Blackston and Barber in any Committee meeting or discussion or otherwise about any "comparable entity."

202. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox did not contact any "comparable entity," other than Policy Studies, Inc., that is qualified to update the

child support schedule.

203. The failure to include Blackston and Barber in selecting comparable entities to update the child support schedule breeches the 2003 Agreement ¶4(a-b) and constitutes "bad faith and fraud" by Defendants State of Alabama, Houston, Helms, Jackson and Maddox.

204. Additionally, Defendants State of Alabama, Houston, Helms, Jackson and Maddox violate the 2003 Agreement ¶4(a-b) and exhibit "bad faith and fraud" by the failure to solicit comparable entities and contracting with Policy Studies, Inc., without consulting qualified vendors or including Plaintiffs Blackston and Barber in selecting vendors to update the child support schedule.

205. Since 1993 the State of Alabama and those charged with reviewing Alabama's child support guidelines follow a course of action to eliminate Blackston and Barber from the child support guideline reviews.

206. The Defendants knew that selecting Policy Studies, Inc., as the sole vendor to update the child support schedule is the primary reason for the 1999 lawsuit.

207. Once again, the Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox attempt to carry out the same arbitrary scheme to defraud and eliminate Blackston and Barber's participation on the Committee, that occurred in the 1999 child support guideline's review.

**(iii). Scienter - false representation with intent to defraud**

208. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox previously knew about the 1995 Agreement and the 2003 Agreement.

209. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox

previously knew, through the existence of two (2) Settlement Agreements, that Alabama's child support guidelines have NOT been reviewed since 1993 because of state defendants seeking to gerrymander the child support guideline's review by holding secret meetings and freezing out Blackston and Barber and the public from knowledge about the Committee activities and information.

210. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox were put on judicial notice by Committee members and experts in the child support update business, that Policy Studies, Inc.'s updated child support schedule was fraudulent and did not conform to federal guidelines for child support updates, both previously to the 12 March 2004 Committee meeting and during the 12 March 2004 Committee meeting.

211. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox knew about the 1995 Agreement and the 2003 Agreement and callously chose to disregard the agreements, seeking to force Policy Studies, Inc.'s updated child support schedule upon the Committee and to eliminate all competition against defendants position and to eliminate or minimize Committee deliberations that included Blackston and Barber.

212. The arbitrary and secret selection of Policy Studies, Inc., in 1999, to update the child support schedule was the "intense" anti father, anti non-custodial parent, anti National Congress for Fathers and Children's members, anti Blackston and Barber (because of NCFC affiliation) animus, by the State of Alabama, that caused the 1999 lawsuit, resulting in the 2003 Agreement.

213. The intense "anti Blackston and Barber" animus is behind all the decisions over the past several years that has prevented Plaintiffs Blackston and Barber's meaningful and appropriate participation on Alabama's child support guideline's reviews.

214. Now in 2004, the same arbitrary actions by Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox causes Policy Studies, Inc.'s updated child support schedule's acceptance in the same identical way the schedule was accepted in 1999.

215. During settlement negotiations for the 2003 Agreement, Plaintiffs Blackston and Barber were concerned that Policy Studies, Inc., was NOT the proper vendor to update the child support schedule because of Policy Studies, Inc.'s use of flawed data and conflict of interests.

216. Plaintiffs Blackston and Barber accepted the wording in ¶4(b) of the 2003 Agreement that "some comparable entity" would be considered in addition to Policy Studies, Inc., because "some comparable entity" means the Committee would search for a suitable alternative to Policy Studies, Inc., and Policy Studies, Inc., would have to stand on it own merits or be defeated by more qualified entities to update the child support schedule.

217. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox are well aware that the selection of Policy Studies, Inc., as the sole vendor to update the child support schedule effectively voids both the 1995 Agreement and the 2003 Agreement.

218. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox are well aware that freezing out Blackston and Barber from the vendor selection process would grant to the defendants absolute power to predetermine the final outcome of the Alabama Child Support Guideline's Review which would grant to the defendants a tremendous and unfair advantage over the plaintiffs.

219. Choosing Policy Studies, Inc., as the sole vendor to update the child support schedule enables Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox to prearrange the controlling decisions of the Committee and set the mood for all Committee

deliberations to the detriment of Plaintiffs Blackston and Barber.

220. The 2003 Agreement, ¶4(b) only allows Defendants State of Alabama, Houston, Helms, Jackson and Maddox to enter into a contract with Policy Studies Inc., or some other "comparable entity." The 2003 Agreement does NOT allow the defendants to make the choice of the entity to update the child support schedule.

221. Defendant Helms, acting alone, is unqualified to chose a vendor to update the child support schedule.

222. The choice of entities such as Policy Studies, Inc., or "some comparable entity" should have been made in a Committee meeting, scheduled within the three (3) months from 25 September 2003, as set forth in the 2003 Agreement, ¶4(a).

223. After the entity is chosen by the Committee according to the 2003 Agreement, ¶4(a) then the Defendants issue the Contract to update the child support schedule according to the 2003 Agreement, ¶4(b).

224. The 2003 Agreement requires Defendants Houston, Helms, Jackson, Gosa and Maddox to include Blackston and Barber in selecting venders to update the child support schedule.

225. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox proceed with a course of action to defraud Plaintiffs Blackston and Barber and Alabama's non-custodial parents by reviewing Alabama's child support guidelines based on Policy Studies, Inc.'s fraudulent data and holding a fraudulent 2004 child support guideline's review, that breeches the 1995 Agreement and the 2003 Agreement and this Honorable Court's Order and Final Judgement.

## CLAIM III

## FIRST AMENDMENT

### (i). Freedom of Speech

226. Plaintiffs Blackston and Barber incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

227. Policy Studies, Inc., published the updated child support schedule entitled "Alabama Updated Child Support Schedule" on 25 February 2004 in written format and Adobe PDF format.

228. On 27 February 2004, Defendant Jackson mailed to all Committee members a Memo detailing the Contract with Policy Studies, Inc., proposing an update to the child support Schedule, with the written updated child support schedule attached.

229. The written updated child support schedule was furnished to each Committee member with the express requirement that the written updated child support schedule is "copyrighted" and only the Committee members had special permission from Policy Studies, Inc., to receive a copy.

230. Because Policy Studies, Inc.'s updated child support schedule was copyrighted, Plaintiffs Blackston and Barber were forced to deny their constituents and the general public of information necessary to make informed decisions about Alabama's ongoing child support guideline's review.

231. While Blackston and Barber were denied their right to disseminate information about Policy Studies, Inc.'s updated child support schedule, lawyers throughout the State of Alabama were given a copy of Policy Studies, Inc., updated child support schedule, including an electronic copy of the child support schedule in Adobe PDF format.

232. Plaintiffs Blackston and Barber were denied a copy of Policy Studies, Inc.'s updated child support schedule in Adobe PDF format.

233. The denial of Plaintiffs Blackston and Barber's right to disseminate information about Policy Studies, Inc.'s updated child support schedule to their constituents had a major impact on Blackston and Barber's ability to perform their duties as Committee members and keep their constituents informed about the Committee and denied Blackston and Barber's first amendment right to free speech.

234. Plaintiffs Blackston and Barber are intrically involved in child support issues through the National Congress for Father and Children and should have the same rights to information as divorce and child support lawyers in Alabama.

235. Plaintiffs Blackston and Barber and the public cannot make informed decisions or comments on Alabama's ongoing child support guideline's review without being given a chance to view ALL pertinent information concerning Policy Studies, Inc.'s updated child support schedule.

236. By virtue of Policy Studies, Inc., updated child support schedule being copyrighted and instructions NOT to make copies, Plaintiffs Blackston and Barber were prohibited from providing public information about Alabama's 2004 child support guideline's review to their constituents and the general public.

237. By denying Blackston and Barber the right to disseminate Policy Studies, Inc.'s updated child support schedule in written and Adobe PDF format to the public, Blackston and Barber were denied their first amendment rights to free speech and Blackston and Barber's ability to perform their duties as members of the Committee and keep their constituents informed about

the Committee is severely impaired.

**CLAIM IV**

**FOURTEENTH AMENDMENT**

**ALABAMA CONSTITUTION, 1901, ARTICLE I, §6 & 13**

**(i). Equal Treatment**

238. Plaintiffs Blackston and Barber incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

239. Policy Studies, Inc., published the updated child support schedule entitled "Alabama Updated Child Support Schedule" on 25 February 2004 in written format and Adobe PDF format.

240. On 27 February 2004, Defendant Jackson mailed to all Committee members a Memo detailing the Contract with Policy Studies, Inc., proposing an update to the child support Schedule, with the written updated child support schedule attached.

241. The written updated child support schedule was furnished to each Committee member with the express requirement that the written updated child support schedule is "copyrighted" and only the Committee members had special permission from Policy Studies, Inc., to receive a copy.

242. Plaintiffs Blackston and Barber were forced to deny their constituents and the general public information necessary to make informed decisions about Alabama's child support guidelines.

243. While Blackston and Barber were denied their right to disseminate information about Policy Studies, Inc.'s updated child support schedule, divorce and child support lawyers throughout the State of Alabama were given a written copy of Policy Studies, Inc.'s updated child

support schedule and an electronically searchable copy of the updated child support schedule in Adobe PDF format.

244. The fact that divorce and child support lawyers throughout the State of Alabama were given Policy Studies, Inc.'s updated child support schedule while denying Blackston and Barber the right to disseminate the updated child support schedule to their constituents allowed divorce and child support lawyers, some who are also Committee members, a tremendous and unfair advantage over Blackston and Barber and their constituents in their ability to make informed decisions about Alabama's ongoing child support guideline's review and denied Blackston and Barber a meaningful part in the Committee deliberations on 11-12 March 2004.

245. The Policy Studies, Inc.'s updated child support schedule in written and Adobe PDF format should be open to the public, else the public is denied information necessary to make informed decisions about Alabama's ongoing child support guideline's review.

246. Policy Studies, Inc.'s updated child support schedule in PDF format greatly enhances the ability to search for information within the updated child support schedule and places anyone without the Adobe PDF formatted document at a tremendous disadvantage.

247. The Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox do not have a compelling interest or a rational basis to deny Blackston and Barber the Policy Studies, Inc.'s updated child support schedule in Adobe PDF format.

248. The fact that Plaintiffs Blackston and Barber were denied access to Policy Studies, Inc.'s updated child support schedule in Adobe PDF format is significant because the Committee is undergoing a rare child support guideline's review and Policy Studies, Inc.'s updated child support schedule is the central theme for discussion during the 11-12 March 2004 and 19 April

2004 Committee meetings.

249. Blackston and Barber and their constituents were denied the right to search the PDF formatted files containing Policy Studies, Inc.,'s updated child support schedule while divorce and child support attorneys were granted that right and thereby were denied equal treatment by Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox.

250. The denial of Blackston and Barber's right to disseminate Policy Studies, Inc., child support schedule in Adobe PDF format to their constituents, while allowing divorce and child support lawyers within the state that right, had a major impact on Blackston and Barber's ability to perform their duties as Committee members and denied Blackston and Barber's their fourteenth amendment right to equal treatment.

251. Blackston and Barber were treated differently than lawyers that specialize in divorce and child support litigation within the State of Alabama and were treated differently than lawyers that specialize in divorce and child support litigation that are also members on the Committee.

252. Blackston and Barber are Committee members and are intrically involved in child support issues through the National Congress for Father and Children and should have the same rights to information as divorce and child support lawyers in Alabama.

253. Additionally, as Blackston's alternate Committee member, Plaintiff Barber is entitled to information about the Committee and to participate in the Committee as an alternate member.

254. Barber must be included in the Committee's review process in order to be up to date and informed in the event Blackston is absent and cannot attend the Committee meetings.

255. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to

notify Plaintiff Barber of the March 11-12, 2004 and the 19 April 2004 Committee meetings.

256. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to send any correspondence to Plaintiff Barber concerning the 11-12 March 2004 and the 19 April 2004 Committee meetings.

257. Plaintiffs Blackston and Barber were intentionally treated differently from others similarly situated by Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox's failure to convene the Committee within three (3) months from 25 September 2003, and selecting Policy Studies, Inc., as the sole vendor to update the child support schedule in a secret meeting that excluded Blackston and Barber and depriving Blackston and Barber from Policy Studies, Inc.'s updated child support schedule in Adobe PDF format and denying Blackston and Barber a right to disseminate Policy Studies, Inc.'s updated child support schedule to their constituents and excluding Barber from all correspondence about the Committee violates Blackston and Barber's equal protection, equal access to the Committee and equal treatment under the fourteenth amendment to the United States Constitution.

258. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox do NOT have a rational basis for treating Blackston and Barber differently and furthermore, the 1995 Agreement and the 2003 Agreement and this Honorable Court's Order expressly precludes the defendants from treating the plaintiffs differently.

**a) Alabama Child Support Association's role in Committee review**

259. The Alabama Child Support Association (ACSA,) held an ACSA 2004 Conference on 1-4 March 2004, just days before the Committee meeting on 11-12 March 2004.

260. Most of ACSA's members are also members on the Committee and/or some child

support collection and enforcement entity in the State of Alabama.

261. The By-Laws of the ACSA state, "The primary purpose of this corporation is to facilitate the improvement in and delivery of child support services in the State of Alabama."

262. The Association membership is limited to those involved with the child support program in Alabama. Leadership of the Association rotates on a yearly basis between DHR and the district attorney members. Over the past 20 years, DHR staff, district attorneys and staff, and private attorneys have worked collaboratively to further these goals

263. The child support program grew within the State and so did the Association.

264. With continued support from both District Attorney's and DHR, the Association became incorporated in 1991.

265. The President of ACSA is an **ex-officio member on the Committee**.

266. ACSA's President is receiving special preferential treatment over the President of NCFC.

267. ACSA is a non-profit corporation the same as NCFC and should not be in any better position than any other non-profit corporation that deals with child support issues.

268. The fact that the Committee's controlling leadership allows the President of ACSA and NOT the President of NCFC to be an ex-officio member on the Committee discriminates against the President of NCFC (Plaintiff Barber) and violates Plaintiff Barber's equal protection and equal treatment rights under the fourteenth amendment.

269. Additionally, Policy Studies, Inc.'s updated child support schedule had been completed on 27 February 2004, by the time of ACSA's 2004 Conference on 1-4 March 2004.

270. Plaintiffs Blackston and Barber believe a conscience decision to approve Policy

Studies, Inc.'s update to the child support schedule was made at the ACSA 2004 Conference before the Committee convened on 11-12 March 2004.

271. The Committee's 2004 child support guideline's review ends up being nothing more than a token resemblance of a child support guideline's review, to satisfy a decision previously made in secret meetings and merely to satisfy the public and give the appearance that the review process is above board and fair to all citizens.

272. ACSA's prearranged knowledge of Policy Studies, Inc.'s updated child support schedule violates Plaintiffs Blackston and Barber's right to equal information, equal access to Committee, equal protection and equal treatment under the fourteenth amendment to the U.S. Constitution.

**(ii). Equal Protection**

273. To qualify for federal Public Assistance Funds the State of Alabama must review the state's child support guidelines according to federal requirements.

274. The State of Alabama has an additional burden - that is to comply with fully enforceable Agreements between the State of Alabama, James R. Blackston and Bradley W. Barber as set forth in the 1995 Agreement and the 2003 Agreement.

275. The 1995 Agreement and the 2003 Agreement set forth affirmative duties the defendants must perform according to CONTRACT.

276. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to convene a Committee meeting within three (3) months of 25 September 2003 in violation of the 2003 Agreement, ¶4(a).

277. In violation of the 2003 Agreement, ¶4(a-b), Defendants State of Alabama, Houston,

Helms, Jackson, Gosa and Maddox prearranged for Policy Studies, Inc., to monopolized the 2004 child support guideline's review by prearranging Policy Studies, Inc., as the sole vendor to update the child support schedule in a secret, closed meeting.

278. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to properly notify Plaintiff Barber and the public about the public meetings held by the Committee on 11-12 March 2004, in violation of the 2003 Agreement, ¶3(b).

279. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to properly convene the required official meeting of the Committee and public hearings within six (6) months from 25 September 2003 by failing to assemble a proper quorum in violation of the 2003 Agreement, ¶4(c).

280. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to select a proper venue for Committee meetings held on 11-12 March 2004 and 19 April 2004.

281. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to properly select a cross section of Committee members from all entities concerned with updating Alabama child support guidelines.

282. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox padded the Committee with unqualified individuals.

283. The Committee is made up of judges, lawyers and DHR employees, none of which are trained and educated in forensic or business economics.

284. None of the Committee members are economics or tax experts and are totally unqualified to make the financial decisions about Alabama's child support guidelines, concerning economic data or the cost of raising children.

285. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to protect Plaintiff Barber's rights under 2003 Agreement as an alternate member on the Committee by not sending any correspondence or notices about the Committee, in violation of the 2003 Agreement, ¶3(b).

286. Acting under color of state law, Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to protect Blackston and Barber's contractual rights under the 1995 Agreement and the 2003 Agreement, thereby violating their constitutional rights to equal protection.

287. Plaintiffs Blackston and Barber were intentionally treated differently from others similarly situated and Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox do NOT have a rational basis for the difference in treatment.

**(iii). Due Process - took action without chance to be heard**

288. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox initiated the 2004 child support guideline's review without Blackston and Barber's knowledge or participation.

289. The secret process to chose Policy Studies, Inc., as the sole vendor to update the child support schedule breeches the 1995 Agreement and the 2003 Agreements.

290. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox unilaterally chose to contract with Policy Studies, Inc., to update the child support schedule without Blackston and Barber's input or knowledge.

291. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox took premature actions that violated Blackston and Barber's contractual rights without giving

Blackston and Barber a chance to respond or object to Policy Studies, Inc.'s exclusive contract in total disregard to the 2003 Agreement, ¶4(b) that clearly states "comparable entities" must be considered to provide an update of the child support schedule.

292. The failure of Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox, acting under color of state law, to convene a Committee meeting within three (3) months, from 25 September 2003, the failure to convene Committee meetings and public hearings within six (6) months from 25 September 2003, the failure to solicit comparable entities and include Blackston and Barber in the vendor selection process to update the child support schedule and failing to properly open the Committee meetings to the public and provide records on the vendor selection process violates Plaintiffs Blackston and Barber's due process rights under the fourteenth amendment of the U.S. Constitution and the Alabama Constitution, 1901, §§6 & 13.

293. Plaintiffs Blackston and Barber were intentionally treated differently from others similarly situated and Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox do NOT have a rational basis for the difference in treatment.

**CLAIM V**

**ALABAMA'S OPEN MEETINGS LAW**

**CODE OF ALABAMA, 1975, §13A-14-2**

294. Plaintiffs Blackston and Barber incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

295. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox agreed to open the Committee meetings to the public in the 2003 Agreement, (See Exhibit B, pg. 5, ¶4(c)

296. A Committee meeting was scheduled for 11-12 March 2004 and 19 April 2004.

297. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox did not give proper public notice of the 11-12 March 2004 Committee meetings, thereby closing the 11-12 March 2004 Committee meetings to the public.

298. Several members of the Committee complained about having to attend the Committee meetings on 11-12 March 2004.

299. Defendant Jackson used the 2003 Agreement to compel the attendance of ALL committee members and sent a copy of the 2003 Agreement to every member and also informed ALL Committee members that the 2003 Agreement "is now binding upon the Committee."

300. Eleven (11) Committee members attended the public hearings on 11 March 2004 and twelve (12) Committee members attend the Committee meeting on 12 March 2004.

301. Four (4) of the Committee members attending the Committee meeting on 12 March 2004 did not show for the public hearings held on 11 March 2004.

302. The members that failed to show for the March 11, 2004, public hearing participated in the March 12, 2004 without hearing the public's comments.

303. Not enough Committee members were present on March 12, 2004 to discuss the public's input and the Committee failed to assemble a proper quorum, however the Committee continued to conduct Committee business without a proper quorum.

304. Members of the Committee NOT in attendance at the public hearing exhibited callous disregard for the public's comments by failing to show for the public hearings on March 11, 2004 and were, therefore, unqualified to vote on Committee decisions on March 12, 2004.

305. Committee business and decisions conducted without public input, closed the doors to the public for purposes of the 11-12 March 2004 Committee meetings.

306. Committee members, to be qualified to vote on Committee business, must be present at ALL Committee meetings therefore, only eight (8) members out a total of twenty-two (22) remain qualified to make decisions and vote on Committee business.

307. The failure by the defendants to correct the intentional disregard by some Committee members to ignore the public's comments is significant because Constitutional principles and federal laws on child support guideline's reviews and Alabama's open meetings law place a high weight on the public's right to comment on issues of public concern.

308. Conducting Alabama's ongoing child support guideline's review absent the public's input is significant because absent the public's input, Alabama's child support guidelines are unconstitutional on due process grounds.

309. The Committee's public hearing on 11 March 2004 and the Committee meeting on 12 March 2004, did not constitute a proper quorum and the defendants did not correct the deficiencies in the quorum.

310. Defendant Gosa, chairman of the Committee did not correct the deficiencies in the quorum therefore the improperly formed Committee meetings on 11-12 March 2004 are a breach of the 2003 Agreement, ¶4(c) for the failure to convene the Committee within six (6) months from September 25, 2003. and effectively closed the Committee meeting's to the public.

311. In a memo, dated 20 February 2004, Alex Jackson details the requirements for the 11-12 March 2004 Committee meetings.

312. The Committee meetings on 11-12 March 2004 were held in Montgomery, Alabama at the Alabama Judicial Building.

313. The Alabama Judicial Building is NOT a public building and entrance to the building

is strictly controlled by sheriff's deputies and the general public is prohibited from entering, at the point of a gun, without good reason and after entering citizens are restricted from access to most of the building.

314. Additionally, all speakers were required to register in advance and were allowed ten (10) minutes to speak.

315. All persons wishing to speak before the Committee were placed on a list that was given to the Marshall of the Supreme Court prior to the public hearing.

316. The requirements further specified "that if persons wishing to speak before the Advisory Committee intend to bring other persons to the public hearing, the names and addresses of these persons must be provided in the written request to Mr. Jackson."

317. The above restrictions do NOT describe a free and open public hearing.

318. Because Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to notify major television and radio about the public meetings on 11-12 March 2004 and 19 April 2004, the major television and radio stations across Alabama did not announce the public meetings.

319. Because Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox failed to notify major newspapers across Alabama about the public meetings on 11-12 March 2004 and 19 April 2004, the major newspapers across Alabama did not announce the public meetings in a way that would inform Alabama citizens about the public meetings and their right to attend.

320. Because Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox's failed to notify the public about the Committee meetings held on 11-12 March 2004,

only a token representation of Alabama citizens were present for the public hearings.

321. Holding the Committee meetings, under armed guard, in the Alabama Judicial Building and unfairly restricting public access as described above, unduly chills the public's desire and ability to participate in the 2004 child support guideline's review process and breeches the spirit and good faith intentions of the 2003 Agreement, ¶4(c).

322. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox, acting under color of state law, placed such strict requirements on potential speakers and guests that such restrictions effectively closed the doors to the public meetings.

323. The Defendants' failure to notify the public about the public hearings and by placing impossible and illegal restrictions upon speakers and guests and holding the Committee meetings in an improper venue, effectively closed the doors to the public and breeches the 2003 Agreement, ¶4(c) and Alabama's Open Meetings Law, Code of Alabama, 1975, §13A-14-2.

**CLAIM VI**

**ALABAMA'S OPEN RECORD'S LAW**

**CODE OF ALABAMA, 1975, §36-12-40**

324. Plaintiffs Blackston and Barber incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

325. Defendants State of Alabama, Houston, Helms, Jackson and Maddox claim in a 20 February 2004 memo that, "In order to prepare for another review of the Guidelines and the Schedule, Randy Helms, the Administrative Director of Courts, sent a request for proposal to assist him in reviewing and updating the Schedule to over 1,100 vendors, supplied by a list from the Division of Purchasing of the State Finance Department containing names of consultants and

cost estimators, as well as five other persons or entities who have dealt with updating other States' Child Support Guidelines and a list obtained from the Internet of 29 colleges and universities.

326. During the investigation phase of the instant case, Defendants Helms, Jackson and Maddox misrepresented the truth to investigators about the existence of the above 1,100 vendors and five other persons or entities who have dealt with updating other States' Child Support Guidelines and a list obtained from the Internet of 29 colleges and universities around the State of Alabama with economics departments.

327. When asked to produce the correspondence sent to the 1,100 vendors mentioned above, Defendants Houston, Helms, Jackson, Gosa and Maddox could not or refused to produce any correspondence sent to the 1,100 vendors.

328. When asked to produce the correspondence sent to the 29 colleges and universities mentioned above, Defendants Houston, Helms, Jackson, Gosa and Maddox could not produce any correspondence sent to the 29 colleges and universities around the State of Alabama.

329. By misrepresenting that 1,100 vendors, supplied by a list from the Division of Purchasing of the State Finance Department were solicited to update the child support schedule and failing to produce any correspondence to the 1,100 vendors, Defendants State of Alabama, Houston, Helms, Jackson and Maddox violated the 2003 Agreement, ¶4(b).

330. By misrepresenting that 29 colleges and universities around the State of Alabama were solicited to update the child support schedule and then could not produce any correspondence sent to the 29 colleges, violated the spirit and good faith provision of the 2003 Agreement.

331. Defendants Houston, Helms, Jackson, Gosa and Maddox's failure or refusal to provide the correspondence above is in violation of Alabama's Open Records Act. Code of Alabama, 1975, §36-12-40 (Open Records Law) and deprives Blackston and Barber from public information needed to make informed decisions about Alabama's ongoing child support guideline's review.

**CLAIM VII**

**ALABAMA'S CHILD SUPPORT GUIDELINES ARE UNCONSTITUTIONAL**

332. Plaintiffs Blackston and Barber incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

333. Plaintiffs Blackston and Barber specifically challenge the constitutionality of Alabama's Child Support Guidelines, ARJA, Rule 32.

334. The Committee is presently reviewing Alabama's child support guidelines which were originally promulgated as Rule 32 of the Alabama Rules of Judicial Administration in order to qualify for receipt of funds appropriated by Congress under the Federal Family Support Act and to satisfy requirements of the 2003 Agreement, ¶4(a-c).

335. Plaintiff Blackston is a Committee member Plaintiff Barber is an alternate Committee member.

336. Alabama's Child Support Guidelines are unconstitutional for the following reasons. [6]

**(i). Alabama's Child Support Guidelines contain Irrebuttable Presumptions**

---

[6] Alabama's Child Support Guidelines can be made constitutionally sound by hiring true economics experts to review the guidelines. Qualified organizations to solicit true economics experts are the National Association of Forensic Economics and the National Association for Business Economics.

337. Alabama's Child Support Guidelines contain irrebuttable presumptions in violation of due process and federal child support guideline's law set forth in 42 USC §667 and 45 CFR §302.56.

338. Alabama must consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from the guidelines.

339. Alabama, in establishing and updating, Alabama's child support guidelines did not analyze case data, gathered through sampling or other methods, on the application of, and deviations from the guidelines.

340. The analysis of the data must be used in the State's review of the guidelines to ensure that deviations from the guidelines are limited.

341. The State of Alabama's failure to analyze case data deprives the Committee of available case data and prevents the Committee from reviewing Alabama's child support guidelines according to federal child support guideline's review standards and creates irrebuttable presumptions within Alabama's child support guidelines.

342. Child support guidelines based on irrebuttable presumptions and fraudulent review procedures and non-existent data, violate due process requirements of the fourteenth amendment.

**(ii). Both parents have equal duty to support children - equal protection**

343. The equal protections of the U.S. Constitution require that the divorced or separated parents of children have an equal duty to support their children.

344. Alabama's Child Support Guidelines place all the burden of supporting children on the non-custodial parent through threats of incarceration.

345. Alabama child support officials claim child support is all for children, and it is impossible to do too much for children, so the higher child support is, the more appropriate it is.

346. Alabama's Child Support Guidelines use child support as the means of funding bureaucratic power.

347. Alabama's Child Support Guidelines transfer wealth from the non-custodial parent to the custodial parent.

348. Alabama's Child Support Guidelines are used to "help women" by exploiting men.

349. These various subjective standards are sometimes disguised behind the ominous label of "public policy." The danger posed by such subjective standards is that they are all in one way or another selfish, unjust, and against the public interest.

350. The Federal Family Support Act, therefore, is properly read to say that child support guidelines must be presumptions which fairly tend to indicate awards based on the constitutional standard of child support, or, in other words, on the equal duty of both father and mother to provide for the reasonable needs of their children on an ability-to-pay basis and anything less violates the equal protection and equal treatment provision of the fourteenth amendment.

**(iii). Irrebuttable presumptions and appropriate awards**

351. An award is legally "appropriate" under 42 USC §667(a)-(b)(1) and 45 Code of Federal Regulations, §302.56(e), if the amount ordered represents the obligor's fair share of the actual costs of raising the child, measured in light of his or her income and resources.

352. Alabama's Child Support Guidelines's legal presumptions are not liberally rebuttable so that deviation from or setting aside the presumption is allowed whenever it is shown that the presumed facts do not fairly approximate or conform to the proper legal objective.

353. Alabama's Child Support Guidelines's presumptions are arbitrary. Even if Alabama's Child Support Guidelines's presumptions are rebuttable, there must still be a reasonable relationship between the basic facts and the presumed facts, otherwise such presumption is null and void.

354. Alabama's Child Support Guidelines do not conform to the Code of Federal Regulations. 45 CFR §302.56(h) demands that child support guidelines be founded upon, not any use of any economic data, but *correct use of authentic economic data on the actual cost of raising children,* including the use of case studies, to assure that they will be as accurate as possible in identifying in the generality of the cases the amount to be paid by the obligor on the assumption that **both father and mother have an equal duty to pay for the actual cost of raising their children in proportion to the resources available to each.**

355. Alabama's Child Support Guidelines contain irrebuttable presumptions and the amount of child support ordered does not represent the obligor's fair share of the actual costs of raising children and therefore violates the equal protection and equal treatment provisions of the fourteenth amendment.

**(iv). "Income Shares Model" Deficiencies in Alabama's Child Support Guidelines**

356. Several deficiencies of the "income shares" child support guidelines, developed by Policy Studies Inc., and adopted for use in the State of Alabama, can be readily identified for purposes of illustration:

357. Alabama's Child Support Guidelines wrongly assumes that the joint income of the parents yields the same amount of available income to support their children. In fact, the overhead incurred for two households is higher: before there was one mortgage or rent payment, but after

divorce there are two, etc.

358. Consequently, divorce means less income available for support of the children, and, in such a situation, the parents will naturally spend somewhat less on their children even while meeting their basic and other special needs.

359. By use of intact family data, the actual costs of raising the children in post-divorce situations is overestimated.

360. Alabama's Child Support Guidelines assume that the custodial parent incurs all costs of raising the child, and ignores the frequently substantial costs incurred by the non-custodial parent.

361. Alabama's Child Support Guidelines misrepresent the truth when it says that these guidelines take these costs of the non-custodial parent into account, and factors them into the equation.

362. Alabama's Child Support Guidelines estimate the cost of raising a child by an inappropriate method. Instead of calculating the cost of the children directly by determining the actual increase in the family budget, these "income shares" guidelines reckon the increase by assuming that the cost of the children will be whatever additional income is needed to keep the cost of food at the same percentage of the household budget that it was before the children were born.

363. But it is now known that this "indirect method" overestimates what it really costs to raise children. For a child, food is a larger part of his cost of living than for an adult, and items other than food are a greater part of the budget of an adult than for a child. This difference helps explain why Alabama's Child Support Guidelines overestimates the cost in raising children.

364. Over estimating the cost of raising children, by incorporating the "Income Shares Model" developed by Robert Williams, Policy Studies, Inc., into Alabama's child support guidelines violates the due process provisions of the fourteenth amendment.

**(v). Child Related Tax Benefits**

365. Alabama's Child Support Guidelines used in the State of Alabama does not properly and adequately consider child-related tax benefits as an economic "cost offset" of the parent who receives them, yet these benefits are very often a significant resource in raising children as a practical matter.

366. In order to accommodate this reality, the parent not receiving these child-related tax benefits must be given the benefit of an appropriate adjustment calculated according to a proper economic formula.

367. Alabama's Child Support Guidelines gives the entire child credit, tax deduction to the custodial parent and totally disregards expenditures by the non-custodial parent entitling the non-custodial parent to share in the tax credit.

368. Alabama's Child Support Guidelines misrepresent the truth when it says that the guidelines used in the State of Alabama take these benefits into consideration.

369. Alabama's Child Support Guidelines are not based on correct use of authentic economic data on the actual cost of raising children.

370. Because Alabama's Child Support Guidelines are not based on correct use of authentic economic data to estimate the actual cost of raising children, and does not apportion the burden fairly between both parents according to their resources, and fails to fairly apportion the tax benefits equally between parents, Alabama's Child Support Guidelines are not valid under the

Federal Family Support Act and violate the equal protection and equal treatment provisions of the fourteenth amendment.

**(vi). Federal Child Support Guidelines Regulations**

371. Plaintiffs Blackston and Barber challenge Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox's operation of the Committee violates federal child support guidelines review procedures enumerated in 45 C.F.R. 302.56 to the detriment of Plaintiffs Blackston and Barber's right to due process, equal treatment, equal protection.

372. The Family Support Act of 1988 (Public Law 100-485) allows States to receive funding under Title IV-D of the Social Security Act, if they meet certain requirements. One condition is that the State must "establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the State." [ 45 CFR 302.56(a); 42 U.S.C. 667(a).]

373. Under 45 CFR §302.56, Congress gave States a basic framework for their child support guidelines. At a minimum, guidelines were designed to do the following:

a) Be based on specific descriptive and numeric criteria;

b) Compute an actual and appropriate child support amount;

c) Be used in both judicial and administrative proceedings;

d) Be a rebuttable presumption of the correct level of support for a child under the particular circumstances; and

e) Provide for a child's health care needs by means of health insurance coverage or another arrangement.

374. To ensure the continued effectiveness of state's child support guidelines, States

would have to evaluate them periodically. Congress sought to guarantee guideline review by requiring an evaluation at least once every 4 years. If the guideline review indicated the need for change, the State was to amend its guideline accordingly.

375. During these reviews, States were to examine the structure and use of their guideline formulae as well as to "consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines."

376. Defendant State of Alabama's operation of the Committee fails to comply with 45 CFR 302.56 for the foregoing reasons, set forth in Claim I, (contempt,) Claim II, (breach of contract,) Claim III, (first amendment,) Claim IV, (fourteenth amendment,) Claim V, (open meetings,) Claim VI, (open records.)

377. Child support awards based on guidelines that were engineered through fraud and bad faith, cannot be an appropriate award of child support as required by 45 CFR 302.56.

378. The policy in Alabama on child support guidelines, as applied to those that are obligated to pay child support, in real life, is one of hatred, prejudice, disdain, contempt, loathsomeness and undeserving of any constitutional or moral rights.

379. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox's fraudulent operation of the Committee will artificially inflate the State of Alabama's coffers with increased federal tax dollars through federal child support incentive payments, based on artificially and fraudulently inflated increases in child support collections.

380. Defendants State of Alabama, Houston, Helms, Jackson, Gosa and Maddox's actions will grossly and unfairly inflate child support awards against Alabama's non-custodial

parents and create an unconscionable atmosphere for Alabama families to raise their children.

381. The Committee's 2004 child support guidelines review does not contain a cross section of experts such as economics and tax experts in accordance with the federal guidelines for state plans for collection and enforcement of child support.

382. The Federal Government set two requirements for State guideline reviews. Every four (4) years, States must (1) analyze case data related to the application of and deviations from the guidelines and (2) consider economic data related to the cost of raising children and analyze the state's case law data. 45 CFR 302.56(h).

383. Despite such minimal requirements, the 2004 child support guidelines review fails to establish constitutionally sound child support guidelines in violation of the due process, equal protection and equal treatment provisions of the fourteenth amendment.

384. The 2004 child support guideline's review fails to adhere to the federal child support guideline's regulations, 45 CFR §302.56 and 42 USC §667(a)-(b)(1) and therefore, are also in violation of the fourteenth amendment, due process, equal protection and equal treatment.

**(vii). Robert Williams, Policy Studies, Inc. Child Support Collection Entrepreneur**

385. The State of Alabama uses a child support guideline derived from a proposal developed by child support collection entrepreneur Robert G. Williams, of Policy Studies, Inc., known as the *Income Shares model*.

386. The model has received continuous criticism since its adoption as one that is arbitrarily contrived, not based on any valid economic evidence, and because it does not correspond to any set of rational principles for making a child support award.

387. The *Schedule of Basic Child Support Obligations*, as it is referred to, is a table of

numbers. In making a child support decision, the court is instructed to use the parents' combined income to look up a number in the table.

388. The corresponding number is presumed to be the dollar amount that the parents should spend on their children. (It can then be adjusted for various reasons.) The "basic obligation" for the payer is part of that amount in proportion to the payer's income.

389. Alabama's Child Support Guidelines, A.R.J.A., Rule 32 says the following to describe the table.

390. The Schedule of Basic Child Support Obligations was developed through research sponsored by the National Center for State Courts and is based on extensive economic research on the cost of supporting children at various income levels.

391. The National Center for State Courts has never sponsored development of a *Schedule of Basic Child Support Obligations* based on extensive economic research on the cost of supporting children at various income levels.

392. As a matter of fact, they have never sponsored extensive research on any aspect of child support guideline design, with the exception perhaps of state by state reviews of political decisions. Certainly nothing however, of a technical or scientific nature.

393. The "extensive economic research" claimed by the State of Alabama, in Rule 32, is nothing more than a proposal for design of guidelines by child support collection entrepreneur, Robert Williams, Policy Studies, Inc.

394. Williams did incorporate the results from a "cost of raising children" study in his proposal. A far cry from "extensive economic research," Williams relied on a single study that was unrelated to the child support award question.

395. The study was conducted over a summer by a sociology professor, Thomas Espenshade, who had no previous experience in making such estimates, and his work has not since received any positive recognition from the scientific community.

396. Espenshade has not himself received much criticism for the work. Other than its use by Williams in recommending values for child support tables, his work on estimating the cost of raising children has not received much attention at all.

397. A far, far cry from "extensive economic research," Espenshade apparently sought to get his feet wet in something new over a summer break. **Espenshade isn't even an economist.** His specialty is immigration and NOT families or children.

398. Espenshade's study was not about making child support awards. He did not have the data or methods necessary to calculate what parents at different income levels spend on children.

399. Espenshade presented results that in quantitative detail have no validity, but his final purpose and point were quite simple.

400. The fact that his study was not about child support awards, and that he did not push his numbers for such political use renders his study and the resulting Williams Income Shares Model for establishing child support awards unconstitutional on due process and equal protection grounds.

401. Espenshade wanted to help train parents, and particularly those parents who had little to no experience dealing with their own financial issues. This would include immigrants from poor countries and even young parents in the United States.

402. Espenshade's study, although providing speculative inaccurate numbers, made a simple, but important point. If you have children, it will cost you. He didn't really know how

much.

403. Alabama's child support guidelines, based on Williams, Income Share Model, is therefore based upon speculative inaccurate numbers and is unconstitutional on due process and equal protection grounds.

404. For example, you get married and the two of you have enough to buy a sports car. You want the sports car but you are also considering having a child right away. Espenshade's results say that if you have the child, it may be impractical to buy the sports car. In concept, the difference between being able to afford the sports car if you don't have the child, and not if you do, is what Espenshade defines as the "cost of raising children."

405. In fact, Espenshade compared expenditure on food in proportion to the number of family members <u>between couples with and without children</u>. What he chose to view as the <u>standard of living difference between couples with and without children</u> represented his cost of raising children.

406. This aspect of the method itself receives criticism even from those who believe any such comparisons can produce worthwhile results.

407. Williams, Income Share Model, is the basis for Alabama's Child Support Guidelines and is based on income and expenditures from intact families including speculative inaccurate numbers and is unconstitutional on due process and equal protection grounds.

408. The data available for his study did not contain the information needed to determine what parents spend on children.

409. Espenshade put a fudge factor into his equation to produce his result. The numeric result is not a statistical result based on the data.

410. The result is not how much parents spend on children. The result is not accurately described as the cost of raising children.

411. The result is primarily a result of his method and his fudge factor, not the data, and is not a reflection of anything concrete.

412. Alabama's Child Support Guidelines, based on Williams, Income Share Model, is therefore based upon speculative inaccurate numbers and includes a constitutional prohibitive fudge factor in his equation to produce his result and is unconstitutional on due process and equal protection grounds.

413. Again however, Espenshade's results have not received much criticism. His study has not received much attention at all, except in the political context created by Robert Williams.

414. Espenshade never claimed to have produced a set of numbers appropriate for use in child support guidelines.

415. Alabama's Child Support Guidelines, based on Williams, Income Share Model, is politically motivated rather than based upon sound scientific research and based upon speculative inaccurate numbers and is unconstitutional on due process and equal protection grounds.

416. Williams actively pursues states to contract as the defacto child support collection agency for the State. In so doing, Williams has a personal interest in inflating the child support guidelines table and creates an extreme conflict of interest actionable under the fourteenth amendment, due process and equal protection standards.

417. Alabama's Child Support Guidelines also claims that the "extensive economic research" on which their table is based, is *on the cost of supporting children at various income levels.*

418. Espenshade was not able to refine his results to differences in spending at different income levels. He did not select a different fudge factor for various income levels. He produced a table of percentages of the amount of total spending by intact families, which he attributed to the "cost of raising children."

419. Alabama's Child Support Guidelines, based on Williams, Income Share Model, derived from Espenshade's flawed studies, is therefore based upon speculative inaccurate numbers derived from a table of percentages of the amount of total spending by intact families and is in no way indicative of the cost of raising children in single parent homes and is unconstitutional on due process and equal protection grounds.

420. The effect of the data on his results was so small that the difference in the percentage between low-income families and high-income families was insignificant. In other words, his detailed numeric results were saying that a wealthy family will suffer the same percentage standard of living loss to raise two children as a poor family.

421. This in no way reflects reality, but only the fact that the same method and fudge factor were applied regardless of the income level. The result illustrates that the family spending data used had very little effect on the result.

422. Alabama's Child Support Guidelines, based on Williams, Income Share Model, is therefore based upon unrealistic numbers and the scenarios and make-believe data used in Espenshade's study does not exist in real life and is unconstitutional on due process and equal protection grounds.

423. The use of Espenshade's results in child support guidelines is apparently more the fault of Robert Williams than of Espenshade himself. However, both Espenshade and his publisher

do deserve some measure of blame.

424. In his book on the study, *Investing in Children*, Dr. Espenshade goes to great lengths explaining what he would like to achieve in his study. It is clear that he wants to provide accurate information on what children cost parents. He discusses his methodology in somewhat philosophical not scientific ways, expressing the logic of what he is trying to do.

425. He does not however, explain that he has failed to do it. He does not mention the inclusion of a fudge factor in obtaining his final results. As unsatisfactory as his attempt was, he does not tell the reader.

426. He does in fact mention the possibility of applying results of studies such as his to the problem of making appropriate child support awards.

427. Constitutional sound child support guidelines cannot be based upon fudge factors and unsupported research such as Dr. Espenshade describes in his book, *Investing in Children.*

428. The choice to recommend child support tables related to Espenshade's results was made by Robert Williams of Policy Studies, Inc.

429. It is clear that the results were not realistic enough for use in anything but casual conversation; to make more of a non-quantitative point.

430. Or as University of Chicago economist Edward Lazear put it (less delicately);

> . . . *the presumption that underlies the focus of much of the empirical research and policy debate on income distribution* [spending within families] *seems born of ignorance and is supported by neither theory nor fact.*

431. Alabama's Child Support Guidelines, based on Williams, Income Share Model, is NOT based upon empirical research and is based more on ignorance and is unsupported by theory

or fact and is unconstitutional on due process and equal protection grounds.

432. Alabama's Child Support Guidelines, based on Williams, Income Share Model is NOT the appropriate award for child support and violates 45 CFR 302.56(h).

433. The "cost of raising children" is that a particular family cannot afford to buy the sports car they wanted because they are providing for a child's needs instead. The result of having a child in that situation is that the parents, living together in an intact family, cannot afford the sports car.

434. But in application in child support guidelines, Williams claims that the mother only needs to divorce.

435. Her ex-husband will then owe her enough to take care of the child and his share of the cost of buying the sports car to boot -- to bring them to the standard of living they would have had together if they had not had children.

436. That, in the application of Espenshade's conceptual theory is what it would take for one parent to reimburse the other for "the cost of raising children."

437. Alabama's Child Support Guidelines misrepresents the numbers used in their child support tables.

438. Alabama's Child Support Guidelines is not *based on extensive economic research on the cost of supporting children at various income levels.*

439. Even if the above statement were true, the goal it represents does not correspond to any rational view on calculating an appropriate child support award and violates 45 CFR 302.56(h) and is unconstitutional on due process and equal protection and equal treatment grounds.

**Wherefore premises considered the plaintiffs respectfully request that:**

1. Plaintiffs seek an order to show cause, from the court that entered the ORDER AND FINAL JUDGMENT, dated 24 December 2003 and that retained jurisdiction over it, why the defendants should not be held in civil and criminal contempt for violations of the ORDER AND FINAL JUDGMENT.

2. Plaintiffs seek restitution under breech of contract and 42 U.S.C. 1983 et seq.

3. Plaintiffs Blackston and Barber demand jury trial on all issues according to Rule 38.

4. Each plaintiff demands compensatory and punitive damages commensurate with the degree of harm suffered by the plaintiff, an amount to be determined by jury.

5. Each plaintiff prays for such other, further and different relief to which he may be entitled and for general relief.

Respectfully submitted on,

DATED this, the 12th day of April 2004.

James R. Blackston

Bradley W. Barber

Plaintiff's Address

James R. Blackston
3262 Tyrol Lane
Vestavia, Al 35216-4252
205-822-9121

Bradley W. Barber
4732 Hand Lane

Gardendale, Ala 35071-4732
205-631-9733

Defendant's Address

State of Alabama
Office of the Attorney General
Honorable Troy King
11 South Union Street
Montgomery, Ala. 36130-0001
334-242-7300

Alabama Supreme Court
Chief Justice Gorman Houston
300 Dexter Avenue
Montgomery, Al. 36104-3741

Administrative Office of Courts
Director Randy Helms
300 Dexter Avenue
Montgomery, Ala 36104-3741
1-800-392-8077

Committee on Child Support
Guidelines and Enforcement
District Judge L. E. Gosa
330 First Street, N. E.
Vernon, Alabama 35592
205-695-9427

Alex Jackson
300 Dexter Avenue
Montgomery, Al. 36104-3741

Bob Maddox
Administrative Office of Courts
300 Dexter Ave
Montgomery, Al 36130-0101
1-800-392-8077

## VERIFICATION

I, James R. Blackston, am the plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief; and, as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the 12th day of April 2004 at Birmingham, Alabama.

James R. Blackston

James R. Blackston

I, Bradley W. Barber, am the plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief; and, as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the 12th day of April 2004 at Birmingham, Alabama.

Bradley W. Barber

Bradley W. Barber

**STATE OF ALABAMA )**

**) ACKNOWLEDGMENT**

**COUNTY OF JEFFERSON )**

I, the undersigned authority, a Notary Public in and for said County and State, do hereby certify that James R. Blackston and Bradley W. Barber, whose names are signed to the foregoing Petition and who is known to me, acknowledged before me on this date, that being informed of the contents of the instrument, they executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 12th day of April 2004.

(SEAL) Deborah L. Chadwick

Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 24, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS

## CERTIFICATE OF SERVICE

I, James R. Blackston and Bradley W. Barber, the undersigned, do hereby certify that, We have this day served a copy of the Verified Complaint, including exhibits and Request for Waiver of Service of Process, on all defendants by placing a copy of the same in the United States Mail, postage prepaid and properly addressed on the 12th day of April 2004.

James R. Blackston
3262 Tyrol Lane
Vestavia, Al 35216-4252
205-822-9121

Bradley W. Barber
4732 Hand Lane
Gardendale, Ala 35071-4732
205-631-9733

38716

IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT
OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. BLACKSTON, BRADLEY W. BARBER, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 93-H-623-N |
| STATE OF ALABAMA, et al., | ) | |
| Defendants. | ) | |

RELEASE AND SETTLEMENT AGREEMENT

WHEREAS, on December 8, 1995, a conditional settlement agreement was reached between the attorneys for the parties which included monetary provisions involving the above-styled case and provisions regarding this Release and Settlement Agreement; and

WHEREAS, the parties recognize it is in the best interest of the parties to end this litigation; and

WHEREAS, the parties desire to settle all the claims, actions, or causes of actions that the Plaintiffs have against the Defendants, and the State of Alabama, its directors, officials, employees, agents, or servants and specifically the issues in this case including but not limited to, the claims pursuant to the United States Constitution, 42 U.S.C Section 1983,

Exhibit A

Title VII, Constitution of Alabama 1901, and the state law claims.

NOW THEREFORE, the parties, desiring to set the settlement of this case in writing state as follows:

1. Plaintiffs' counsel has met with the Plaintiffs and has discussed with them in detail the settlement of this case. Counsel for the Plaintiffs has discussed the strengths and weaknesses in this case and her opinions of the probability of success or failure if the case were to be tried before a jury.

2. All Defendants deny liability, and specifically, each Defendant denies that he is guilty of any wrongdoing in this case. Nothing in this Release and Settlement Agreement shall operate as an admission, acceptance or determination of liability by or upon any of the Defendants. Each and all of the Defendants have expressly denied any violation of or failure to comply with any constitution, law, statute, order, regulation, consent decree or settlement agreement and nothing contained in this Release and Settlement Agreement is intended or is to be construed as any admission of liability or admission of any violation of any provision of any constitution, law, statute,

order, regulation, consent decree or settlement agreement.

3. The Alabama General Liability Trust Fund has made a decision to settle this case based on its determination that further litigation in this matter and the attendant cost thereof would be detrimental to its interest. In accordance with its decision to avoid further cost of litigation, the Alabama General Liability Trust Fund, on behalf of the Defendants, and based on purely economic consideration agrees to settle this case for the total sum of one thousand three hundred and fifty ($1,350.00) dollars which will be paid within fifteen (15) working days from the date of the signed Release and Settlement Agreement. The total payment of one thousand three hundred and fifty ($1,350.00) dollars includes all attorney fees, expenses, compensation and costs involved in this lawsuit. Payment shall be made by the Alabama General Liability Trust Fund to the Plaintiffs' attorney's trust account. After having negotiated all terms and provisions of this Release and Settlement Agreement, it has been agreed that all Plaintiffs' attorney fees, expenses, and costs in this case have been settled

and compromised. The attorney fees, expenses and costs settled include the fees and cost of the Plaintiffs' counsel Wendy L. Williams, and any other attorney, paralegal or other person who may have participated in any manner on Plaintiffs' behalf in this case and shall include all such attorney's fees, expenses, and costs incurred.

4. In consideration of the payment of the sum mentioned in Paragraph 3, Plaintiffs hereby fully release and discharge each and every Defendant, personally and in their official capacity, the State of Alabama, its agents, employees, officers, directors and servants. It is the intent of the provisions of this Release and Settlement Agreement to settle any and all claims, rights, actions, causes of actions, which the Plaintiffs, James R. Blackston and Bradley W. Barber, have or may have against the Defendants, the State of Alabama, its agencies, departments, officers, employees, agents, directors and servants. Plaintiffs agree to dismiss the above-styled lawsuit with prejudice.

5. This Release and Settlement Agreement is intended by the parties to release all claims for damages related to this action whether known or unknown,

foreseen, unforeseen, patent or latent, which the Plaintiffs may now have or may hereafter have against the Defendants, personally or in their official capacity, the State of Alabama, its agents, servants, employees, officials and directors.

6. As part of this Release and Settlement Agreement, the parties agree that Plaintiff James R. Blackston will be approved and assigned as the representative of the National Congress for Men and Children on the Alabama Supreme Court's Advisory Committee on Child Support Guidelines and Enforcement effective on the date of the execution of this Release and Settlement Agreement.

7. All parties agree and stipulate that there will be no appeal from this Release and Settlement Agreement or from any ruling, order, or other decision entered by the Court in this case relating to any issue or subject matter.

8. It is expressly understood and agreed that the terms of this Release and Settlement Agreement are confidential between the parties and their representatives and are not to be published to third parties. However, it is understood that the defendants, and their representatives may discuss

the terms of this Release and Settlement with the Finance Department, the Governor's Office, the Attorney General's Office and its officials and employees in order to achieve the goal and provisions of this Release and Settlement Agreement. It is further understood that the parties may discuss the terms of this Release and Settlement if required by law.

9. This Release and Settlement Agreement is enforceable as if a contract between the parties. A violation of the agreement may be used as grounds for a lawsuit for breach of contract in state or federal court.

10. The parties recognize and respect their rights and obligations both as litigants in this case and as persons sharing, within the State of Alabama, the common goal of performing a public service to the tax paying citizens of the State. This settlement agreement is entered into by the parties in a spirit of voluntary and good faith cooperation and to avoid the time and expense of continued contested litigation. This good faith provision specifically includes use of all reasonable efforts to achieve the goals of this Release and Settlement Agreement which is to end

the litigation.

11. Except to the extent expressly provided in the Release and Settlement Agreement nothing contained herein is intended or will be construed as altering, superseding, or amending any other rule, law or regulation of any department or agency of the State of Alabama.

12. This Release and Settlement Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or understandings other than those expressly set forth herein.

Agreed to this 15th day of December, 1995.

| | |
|---|---|
| James R. Blackston | January 10, 1996 |
| JAMES R. BLACKSTON | DATE |
| Bradley W. Barber | January 4, 1995 |
| BRADLEY W. BARBER | DATE |
| Wendy L. Williams | December 31, 1995 |
| WENDY L. WILLIAMS<br>Attorney For Plaintiffs | DATE |
| Mary Elizabeth Culberson | December 15, 1995 |
| MARY ELIZABETH CULBERSON<br>ASSISTANT ATTORNEY GENERAL<br>Attorney for JUDGE RICHARD DORROUGH individually and in his official capacity as Chairman, Supreme Court Advisory Committee on Child Support Guidelines and Enforcement | DATE |

General Liability Trust Fund 70575
Invoice approved on 1/30/96
By: [signature]
Voucher # ______ for $ ______
Object Codes: 1133 for $ 1350.00
______ for $ ______
______ for $ ______
Claim No. 9493-00343
Department: ______
Case No. Blackston, et al

**IN THE UNITED STATES COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| James R. Blackston<br>Bradley W. Barber<br><br>Plaintiffs,<br><br>v.<br><br>State of Alabama, et. al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: 99-A-295-N |

**SETTLEMENT AGREEMENT AND RELEASE**

**WHEREAS,** the parties to this agreement have been in controversy; and the parties have negotiated and agreed upon a resolution of all their differences, they freely and voluntarily enter into the SETTLEMENT AGREEMENT AND RELEASE set forth herein.

**WHEREAS,** all parties recognize that it is in the best interest of the parties to end this proceeding, including but not limited to any appellate litigation and collateral litigation which could be initiated; and that the inducement for entering into this agreement is to fully settle and compromise disputed claims in this action and to avoid the expenses and uncertainties further litigation of this proceeding would necessarily entail.

**WHEREAS,** nothing contained in this SETTLEMENT AGREEMENT AND RELEASE is intended or is to be construed as any admission of liability or that any or all of the Plaintiffs' claims or corresponding prayers for relief are meritorious; and

Exhibit B

**IN CONSIDERATION** of the mutual promises herein made, the parties to the above-styled cause agree to total settlement and satisfaction of all claims for equitable, declaratory, or monetary relief, and damages they may have against one another, and all claims for costs or other expenses or liabilities incurred by any party to this proceeding are hereby **DISMISSED WITH PREJUDICE**, pursuant to Rule 41(a)(2), *Federal Rules of Civil Procedure*. It is stipulated and agreed by and between the parties that:

1. The parties understand and agree that this SETTLEMENT AGREEMENT AND RELEASE is for the mutual benefit of the Plaintiffs and the Defendants named herein, in total satisfaction of all claims, rights of recovery, entitlements, causes of action, actions, or damages, including the right of appeal and any and all costs claimed of or against any party arising in any way from this litigation.

2. James Blackston and Bradley Barber specifically agree as follows:

   a. The above-styled cause of action is dismissed with prejudice. The Plaintiffs further understand and agree that they will not appeal from the dismissal of this lawsuit, or from any ruling, order, or decision in this case relating to any issue or subject.

   b. James Blackston and Bradley Barber agree to forever and fully release the State of Alabama, and all its agencies, entities, officials, employees, successors and agents of the State of Alabama, including but not limited to the Administrative Office of Courts, Richard Dorrough, Frank Gregory, Rich Hobson and Bob Maddox, from all liability and/or claims which have arisen

or may arise from this litigation including all claims of damages, equitable, declaratory and injunctive relief, costs, and other expenses incident to this litigation which the parties may have at law or in equity, or may have hereinafter, whether known or unknown as a result of, or pertaining or related in any way to, any transaction, communication, occurrence, non-occurrence, act or failure to act, loss, damage, or any other event or events occurring or related in any manner whatsoever to the allegations set forth in this lawsuit which forms the basis of this settlement.

c. James Blackston and Bradley Barber do hereby for themselves, their executors, administrators, heirs and for all those claiming for them, or on their behalf, forever and fully release, acquit, and discharge the Defendants Richard Dorrough, Frank Gregory, Rich Hobson and Bob Maddox, and the State of Alabama and its officers and employees, and any and all related, affiliated, predecessor, and successors of the entities, collectively and separately and severally in their official capacities and in their individual capacities, from any and all liability, claims, allegations, causes of action, losses, compensatory damages, punitive damages, loss of income, all compensation whatsoever, claims for mental anguish, claims for loss of reputation, all claims which were raised or could have been raised in the above-styled lawsuit, and from all other claims, actions or causes of action of every kind and nature arising out of, or in any way related to, any of the matters alleged, or which could have been alleged, in the above-styled lawsuit, or arising out of, or in any way related to, any past dealings, communications or contact of any kind or nature

between the Plaintiffs and any of those hereby released. This release is all encompassing and its generality is not limited by the designation of specific claims and causes of action which are only partial subjects of this settlement.

3. Defendants Richard Dorrough, Frank Gregory, Rich Hobson and Bob Maddox and the State of Alabama specifically agree as follows:

a. In consideration for the Plaintiffs' dismissal of this lawsuit and the release and discharge, the Defendants agree to pay the total sum of $8,912.00 (eight thousand nine hundred and twelve dollars), made payable by check in the amount of $4,612 to James Blackston and in the amount of $4,300 to Bradley Barber within sixty (60) days from the date of this Settlement Agreement. The Plaintiffs understand that the total monetary amount of $8,912.00 encompasses the complete settlement amount for any and all claims that arise and may arise from this litigation.

b. James Blackston shall be appointed to serve as a representative of the National Congress for Fathers and Children, on the Alabama Supreme Court Advisory Committee for Child Support Guidelines and Enforcement. Bradley Barber shall serve as an alternate member of the Alabama Supreme Court Advisory Committee for Child Support Guidelines and Enforcement in the absence of James Blackston and has the ability to vote in his absence as his designee.

4. For the purposes of the SETTLEMENT AGREEMENT AND RELEASE,

a. The Defendants shall submit a request to the Alabama Supreme Court Advisory Committee on Child Support Guidelines and Enforcement to convene a new committee within three (3) months from September 25, 2003, or within the earliest practicable time, based on the expiration of the existing terms and/or vacancies of the current committee members.

b. The Defendants shall submit a request to the Alabama Supreme Court that the Administrative Office of Courts will contract with Policy Studies Inc. or some comparable entity, to provide an update of the child support schedule dated January 27, 1999, and submit the information to the Advisory Committee on Child Support Guidelines and Enforcement within four (4) months from September 25, 2003 or within the earliest practicable time.

c. The Defendants shall submit a request to the Alabama Supreme Court that the Advisory Committee on Child Support Guidelines and Enforcement convene an official meeting within six (6) months from September 25, 2003, or within the earliest practicable time. It is understood between the parties that the public may attend the meetings and submit written commentary to the Advisory Committee on Child Support Guidelines and Enforcement in accordance with the manner and/or method set by the Alabama Supreme Court.

5. No provision of this SETTLEMENT AGREEMENT AND RELEASE shall be construed to restrict, limit and/or delineate the authority of the Alabama Supreme Court to take any action regarding the Advisory Committee on Child Support Guidelines and Enforcement.

6. No provision of this SETTLEMENT AGREEMENT AND RELEASE shall be construed to contravene, alter, and/or supercede the authority of any law, rule and/or regulation of any department or agency of the State of Alabama.

7. The parties understand and agree that the SETTLEMENT AGREEMENT AND RELEASE shall not be construed as an admission of liability, fault, wrongdoing, or a recognition or admission of the validity of any claim, cause of action or defense asserted by the parties herein.

8. The parties understand and agree that each party is to bear his or her own costs and attorney's fees in this litigation and that no party shall be liable for a payment of costs or attorney's fees to any other party.

9. The parties further warrant and represent that they, each and all of them have not heretofore assigned, transferred or hypothecated to any person, corporation, partnership, or any other entity or party all of any portion of any claim whatsoever that any party may now have, had at any time, or may have in the future against any other party, all of which claims are hereby fully discharged, settled, released and forever extinguished.

10. This SETTLEMENT AGREEMENT AND RELEASE represents the entire understanding of the parties and it is agreed that there are no representations, warranties, convenants or understandings other than those expressed herein. The

parties further agree that this SETTLEMENT AGREEMENT AND RELEASE is enforceable as a contract. A violation of the agreement may be used as grounds for a breach of contract suit in Federal or state court.

11. The parties further agree that this SETTLEMENT AGREEMENT AND RELEASE does not alter or supercede the Release and Settlement Agreement entered into on December 15, 1995, in the case of *Blackston, Barber v. State of Alabama et. al.*, Civil Action No. 93-H-623-N, Middle District of Alabama, Northern Division.

12. The parties have read and fully understand the terms, provisions, contents and the effects of the SETTLEMENT AGREEMENT AND RELEASE. The parties accept each and all of the terms, provisions, and conditions of the SETTLEMENT AGREEMENT AND RELEASE and do so voluntarily and for the purpose of making a full and final compromise settlement of any and all claims.

James Blackston
JAMES BLACKSTON
Plaintiff, pro se

November 24, 2003
DATE

Bradley Barber
BRADLEY BARBER
Plaintiff, pro se

November 24, 2003
DATE

LaVette Lyas-Brown
LaVette Lyas-Brown (LYA 001)
Assistant Attorney General
Attorney for Defendants Richard Dorrough, in his individual and official capacity as Chairman, Supreme Court Advisory Committee on Child Support Guidelines and Enforcement; Frank Gregory in his individual and official capacity as Former Administrative Director of Courts; Rich Hobson, in his individual and official capacity as Administrative Director of Courts and Bob Maddox, in his individual and official capacity as Legal Liaison, Supreme Court Advisory Committee on Child Support Guidelines and Enforcement

December 5, 2003
DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FILED
DEC 24 2003
VMC
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| JAMES R. BLACKSTON and BRADLEY W. BARBER, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. 99-A-295-N |
| STATE OF ALABAMA, et al., | ) | |
| Defendants. | ) | |

**ORDER AND FINAL JUDGMENT**

The parties to this case having reached a settlement, having submitted to the court a copy of their Final Agreement and Release, and having requested that the court enter Final Judgment in accordance therewith, it is hereby ORDERED as follows:

1. The copy of the Settlement Agreement and Release is ORDERED filed as an attachment to this Order and Judgment.

2. Final Judgment is entered in accordance with the Settlement Agreement and Release, and the parties are ORDERED to abide by all terms of the Agreement.

3. This case is DISMISSED with prejudice, and any outstanding motions are DENIED as moot.

DONE this 24th day of December, 2003.

W. Harold Albritton
W. HAROLD ALBRITTON
CHIEF UNITED STATES DISTRICT JUDGE

209

EOD 12/24/03

Exhibit C

SUPREME COURT OF ALABAMA

ROBERT G. ESDALE
CLERK
LYNN KNIGHT
ASSISTANT CLERK

OFFICE OF THE CLERK
300 DEXTER AVENUE
MONTGOMERY, AL 36104-3741
(334) 242-4609

MEMORANDUM

TO: Members of the Child Support Guidelines and Enforcement Committee

FROM: Alex W. Jackson, Staff Attorney

DATE: January 28, 2004

RE: Recent developments affecting the Committee.

I have received several comments from Committee members questioning the necessity of a meeting of the Committee and, in particular, the timing of the meeting of the Committee. To further advise you of the reasons behind calling this meeting, on what may be considered fairly short notice, I'm enclosing for your information and consideration a recent settlement agreement and release entered in the United States District Court for the Middle District of Alabama, Northern Division. This settlement agreement and release is now binding upon the Committee, and it is the Court's desire to be in full compliance with the terms and conditions of the settlement. After you have reviewed this settlement agreement and release, I would be happy to answer any questions you might have regarding the same.

I regret any inconvenience that is being caused to Committee members by the setting of a meeting with only two months' notice, but it was the feeling of legal staff that we could not justify any delays in setting this meeting.

/Attachment

Exhibit D