IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. BLACKSTON and | ) | |
| BRADLEY W. BARBER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:04cv348-T |
| | ) | |
| STATE OF ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this pro se 42 U.S.C. § 1983 action, James R. Blackston ("Blackston") and Bradley

W. Barber ("Barber") claim that the defendants violated their constitutional rights as well as

state law by failing to adhere to the terms of a 2003 settlement agreement which terminated

a previous case they had filed in this court.  The plaintiffs name as defendants Gorman

Houston, former Acting Chief Justice of the Alabama Supreme Court;  L.E. Gosa, Chairman

of the Alabama Supreme Court Advisory Committee on Child Support Guidelines and

Enforcement ("the Advisory Committee"); Randy Helms,  Director of the Administrative

Office of Courts; Alex Jackson, staff attorney for the Alabama Supreme Court; Bob Maddox,

an employee of the Administrative Office of Courts; and the State of Alabama.  The court

has jurisdiction of the plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the

plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  Presently before the court for

resolution is the defendants' motion to dismiss (doc. # 23) supported by their brief (doc. #

24) as well as the plaintiffs' response in opposition to the motion to dismiss (doc. # 27). For the reasons which follow, the court concludes that the plaintiffs' claims should be dismissed, some with prejudice and some without prejudice.

## II. STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* "Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.*

In appraising the sufficiency of the complaint, courts follow the well-established rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(footnote omitted); *see also Gardner v. Toilet Goods Assn.,* 387 U.S. 167, 172 (1967). The threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

2

### III.  FACTS[1] and PROCEDURAL HISTORY

### A.  General Background

In 1986, the Chief Justice of the Alabama Supreme Court established the Alabama

Supreme Court Advisory Committee on Child Support ("the Advisory Committee") to study

and make recommendations to the state courts on issues concerning the child support

guidelines.  The plaintiffs are divorced fathers and active members of the National Congress

for Fathers and Children.  As advocates of this group, the plaintiffs have attended committee

meetings and filed lawsuits challenging the Advisory Committee's determinations regarding

the method of calculating the amount of child support payments that non-custodial parents

are required to pay as well as challenging the manner in which the committee meetings are

conducted.

### B.  The Initial Lawsuit

In 1993, the plaintiffs filed in this court a lawsuit against the State of Alabama and

members of the Advisory Committee, alleging civil rights violations arising from a March

1993 committee meeting.  They claimed that the defendants engaged in a conspiracy and

---

[1]On a motion to dismiss, the court must take the facts as stated in the complaint as true.  Of course, the same is not true with respect to the legal conclusions asserted in the complaint.

violated 42 U.S.C. § 667[2] by holding "secret meetings" which deprived non-custodial fathers of equal protection in developing the Alabama Child Support Guidelines. *See Blackston v. State of Alabama*, No. 2:93cv623-H (M.D. Ala. 1996). Judge Truman M. Hobbs concluded that the conspiracy claim was not cognizable and that 42 U.S.C. § 667 did not create a federal right that the plaintiffs could enforce in federal court. The court also dismissed the plaintiffs' remaining claims under FED.R.CIV.P. 12(b)(6).

On appeal, the Eleventh Circuit Court of Appeals affirmed that decision with one exception: the dismissal of the plaintiffs' First Amendment claim concerning the tape recording of proceedings.[3]  *See Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994). In December 1995, the parties entered into a "Release and Settlement Agreement." (Pls' Ex. A.)  As part of the agreement, the defendants agreed to assign Blackston to the Advisory Committee as a representative of the National Congress for Fathers and Children.[4]

---

[2]This statute, 42 U.S.C. § 667, requires as a condition of receipt of federal funds each state to "establish guidelines for child support award amounts within the State."

[3] The Court specifically determined the following:

> Judge Durrough did not deny the plaintiffs access to the Committee meeting and its deliberations, and did not prohibit them from communicating what they observed to others.  However, his attempt to prohibit them from recording the proceedings did have some impact on how they were able to obtain access to and present information about the Committee and its proceedings.  Thus, Judge Durrough's actions touched on expressive conduct protected by the Free Speech Clause of the First Amendment.

*Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994).

[4] In addition, the parties agreed that the agreement "is enforceable as if a contract between the parties" and that "a violation of the agreement may be used as grounds for a lawsuit for breach of contract in state or federal court."  (Pls' Ex. A at 6.)

(continued...)

4

(*Id.* at 5.)

## C.  The Second Lawsuit

Unfortunately, the plaintiffs were dissatisfied with the way the Advisory Committee continued to conduct its meetings and believed that the defendants were violating the terms of the 1995 settlement agreement, the plaintiffs filed another lawsuit in this court against the State of Alabama and several members of the Advisory Committee on March 25, 1999. *See Blackston v. State of Alabama*, No. 2:99cv295 (M.D. Ala. 2003).  In this second lawsuit, the plaintiffs asserted that the defendants violated the First Amendment by entering into a contract agreement with Policy Studies, Inc.[5] ("Policy Studies") without consulting other committee members.  The plaintiffs further contended that the defendants violated their constitutional rights by asking Blackston and other members to participate in committee activities by mailing comments about Policy Studies' report to the Administrative Office of Courts rather than having in-person meetings.  The plaintiffs also claimed that the defendants violated state and federal law by breaching several terms of the settlement agreement, misappropriating federal funds, engaging in a conspiracy and pattern of racketeering activities, and committing mail and wire fraud.  The court granted the defendants' motion to dismiss all of the plaintiffs' claims, except the plaintiffs' state law claims for breach of

---

[4](...continued)

[5] Policy Studies, Inc., is a business hired by the State of Alabama to update and report on the schedule of child support obligations.

contract.[6]

In December 2003, the parties entered into another settlement agreement, in which the defendants agreed to appoint Blackston as a member and Barber as an alternate member of the Advisory Committee.   In addition, the defendants agreed to allow the public to attend meetings, convene a new committee, provide an update of the child support schedule, and hold an official meeting within a certain time frame.   The parties also agreed that the settlement agreement and release "[were] enforceable as a contract" and that a "violation of the agreement may be used as grounds for a breach of contract suit in federal or state court." (Pls' Ex. B at 7.)   On that basis, then Chief Judge W. Harold Albritton incorporated the settlement agreement into the final judgment, ordered the parties "to abide by all terms of the Agreement," and dismissed the case with prejudice.

### D.  The Present Lawsuit

According to the plaintiffs' allegations, their beliefs that the defendants would conduct Advisory Committee meetings in conformance with their wishes and the settlement agreement were short-lived.   The defendants failed to convene a new committee meeting until approximately three months after the date specified in the agreement, failed to include Blackston and Barber in the decision to hire a specific vendor, and chose Policy Studies as the sole vendor to update the child support schedule.   In addition, the March 2004 meeting

---

[6] The District Court declined to adopt the Magistrate Judge's Recommendation dismissing the breach of contract claim pursuant to FED.R.CIV.P. 12(b)(6) because there was "no motion asking the court to re-visit the propriety of the breach of contract claim under Rule 12(b)(6)." *Blackston v. State of Alabama*, No. 99-A-295-N (Doc. # 164 at 3).

was held in the Alabama Judicial Building, which was guarded by law enforcement officers who restricted members of the public from entering the building without "good reason" and prevented them from accessing "most of the building." (Pls' Comp. at 17.) All guest speakers were allowed only ten minutes to give their presentations during the meeting and, although four of the committee members failed to attend the public hearing on March 11, 2004, these members participated in the committee meeting on March 12, 2004. The defendants also failed to notify Barber about an April 2004 meeting. The plaintiffs filed the instant lawsuit on April 14, 2004.

### III.  The Plaintiffs' Claims

In their complaint, the plaintiffs raise the following claims:

(1)   The defendants acted in contempt of the court's December 24, 2003 order because:

   (a)   They failed to convene a new committee within three months.

   (b)   They ensured that Policy Studies would be the sole vendor to update the Child Support Schedule in violation of the 1999 and 2003 settlement agreements.

   ©   They failed to include the plaintiffs in the vendor selection process.

   (d)   They failed to conduct open and public meetings.

   (e)   They failed to follow the "Rules of Order."

7

(f)     They conducted meetings without a quorum of members.

(g)     They failed to treat Barber as an alternate member of the Advisory Committee.

(2)     The defendants breached the 2003 settlement agreement, acted fraudulently and in bad faith, and engaged in intentional interference with contractual relations by failing to convene a new committee within three months and failing to include the plaintiffs in the selection of vendors.

(3)     The defendants violated the First Amendment by sending a copyrighted child support schedule to committee members, thus preventing the plaintiffs from disseminating information to their constituents.  In addition, the defendants violated the plaintiffs' right to disseminate information by failing to provide them copies of the report in "Adobe Acrobat" format.

(4)     The defendants violated the Fourteenth Amendment and Article I, Sections 6 & 13 of the Alabama Constitution because:

(a)     They denied the plaintiffs "the right to search the PDF formatted files containing Policy Studies updated child support schedule while divorce and child support attorneys were granted that right." (Pls' Comp. at 42.)

(b)     The Advisory Committee gives the President of the Alabama Child Support Association ("ASCA") preferential treatment over the President of the National Congress for Fathers and Children because the plaintiffs believe that the ASCA approved of the policies prior to the March 11, 2004 meeting.

©     They failed to assemble a proper quorum for the March and April 2004 meetings.  Specifically, the defendants failed to "select a cross section of committee members from all entities concerned

8

with updating child support guidelines" and "padded the Committee with unqualified individuals," such as judges, lawyers, and Alabama Department of Human Resources employees who are untrained in "forensic and business economics." (*Id.*, at 46.)

    (d)    They violated the Due Process Clause and treated the plaintiffs "differently from others similarly situated" by "fail[ing] to convene Committee meetings and public hearings within six (6) months" and "fail[ing] to solicit comparable entities and include Blackston and Barber in the vendor selection process to update the child support schedule and failing to properly open the Committee meetings to the public and provide records on the vendor selection process." (*Id.*, at 48.)

(5)    The defendants violated Alabama's Open Meetings Law, § 13A-14-2, Ala. Code 1975, by holding committing meetings in the Alabama Judicial Building and failing to notify major television and radio stations about the event.

(6)    The defendants violated Alabama's Open Records Law, § 36-12-40, Ala. Code 1975, by refusing to produce correspondence allegedly sent to 1100 potential vendors and 29 universities.

(7)    Alabama's Child Support Guidelines violate the Equal Protection Clause, the Due Process Clause, 42 U.S.C. § 667, and 45 C.F.R. 302.56(h).

## III. DISCUSSION

### A. The First Amendment Claims

The court will first address the plaintiffs' contention that their First Amendment rights were violated because the updated child support schedule prepared by Policy Studies is

copyrighted. Specifically, the plaintiffs assert that, as a result of the copyright, they were "forced to deny their constituents and the general public of information necessary to make informed decisions about Alabama's ongoing child support guidelines review." (Pls' Comp. at 38.) In addition, the plaintiffs assert that their "right to disseminate information" was violated because the report was not provided to them in "Adobe PDF format." (*Id.* at 38.)

During oral argument on March 29, 2005, the defendants pointed out that the plaintiffs have never requested permission to distribute the child support schedule and that they had never prohibited the plaintiffs from providing information in the updated child support schedule to members of their group. The plaintiffs argued that they were under the "impression" that the schedule could not be distributed to their constituents because Policy Studies had copyrighted the report.[7] After discussion regarding the extent of the copyright, the defendants agreed that they would publish the updated child support schedule prepared by Policy Studies on the Alabama Administrative Office of Court's web page. On March 29, 2005, this court ordered the defendants to notify the court when the plan prepared by Policy Studies was posted in Adobe® PDF format on the Administrative Office of Court's website. (Doc. # 49.) On May 31, 2005, the defendants provided notice that they had made the updated child support schedule accessible on their web page at the following address:

---

[7] The court notes that the plaintiffs did not name Policy Studies, Inc., as a defendant in this case and that the plaintiffs have failed to allege that they requested permission from Policy Studies to photocopy or disseminate the copyrighted materials. "The use of a copyrighted work in any way listed in the Copyright Act without permission of the copyright owner constitutes actionable copyright infringement." *See Playboy Enterprises, Inc. v. Starware Publ'g Corp.*, 900 F.Supp. 433, 438 (S.D. Fla. 1995) (citing 17 U.S.C. §§ 106 & 501). *See also Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1494 (11th Cir. 1984) (noting that a copyright owner possesses the exclusive right to reproduce and distribute copies to the public).

http://www.alacourt.gov/ (Doc. # 51.)   Because the report is currently published on the Administrative Office of Court's website, the plaintiffs and the members of their group have the access they sought to the updated child support schedule in searchable Adobe® PDF format.   In addition, the plaintiffs may distribute materials by notifying their constituents regarding information on the website.   Based on the foregoing, the court concludes that the plaintiffs' First Amendment claims are due to be dismissed as moot.

A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.  *County of Los Angeles v. Davis*, 440 U.S. 625 (1979).   The test  is (1) there is no reasonable likelihood of a recurrence of the alleged violation <u>and</u> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.  *Id.*   Because the defendants are government officials, the court may safely presume that the defendants will continue to publish the updated child support schedule reports on the Administrative Office of Court's website or will otherwise ensure that all citizens of Alabama will continue to have access to this information.  *See Troiano v. Supervisor of Elections in Palm Beach Co.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur."); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("Governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.").   Consequently, the defendants' motion

to dismiss these claims should be granted on the basis that the claims are moot.

## B.  The Fourteenth Amendment Claims

### (1)      The Equal Protection Clause

To establish a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest.  *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929 (11th Cir. 1986).   Additionally, to ultimately succeed on an equal protection challenge, a plaintiff must demonstrate the existence of discriminatory intent; mere arbitrary action without discriminatory intent is insufficient to support a claim of a violation of the Equal Protection Clause.  *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).  For the reasons which follow, the plaintiffs' Equal Protection claims are due to be dismissed.

#### *(a)  PDF Formatted Files*

The plaintiffs assert that the defendants violated the Equal Protection Clause because they treated them differently from divorce and child support lawyers by distributing copies of the Policy Studies report in PDF format to lawyers but giving them only typewritten copies of the report.  The plaintiffs contend that providing the report in PDF format gave the lawyers an unfair advantage because they had the ability to search terms in the report on a computer system.

The plaintiffs fail to allege facts demonstrating that the reason for the differential treatment was based on a constitutionally protected interest.  Thus, the plaintiffs have failed to state a claim upon which relief may be granted.  Consequently, the plaintiffs' claim that the defendants treated them differently from divorce and child support lawyers should be dismissed.

### (b) The President of the Alabama Child Support Association

The plaintiffs assert that the Advisory Committee gives the President of the ASCA preferential treatment over the President of the National Congress for Fathers and Children.[8] Specifically, the plaintiffs assert that they "believe a conscience [*sic*] decision to approve Policy Studies, Inc.'s update to the child support schedule was made at the ASCA Conference before the Committee convened on 11-12 March 2004" and that this "prearranged knowledge . . . violate[d] [their] right to equal information, equal access to Committee, equal protection and equal treatment."  (Pls' Comp. at 44-45.)  In addition, they contend that the defendants violated their constitutional rights because the President of the ASCA is an ex-officio member of the Committee, but that the President of the Congress for Fathers and Children does not have ex-officio member status.

The plaintiffs fail to allege facts demonstrating that the reason for differential treatment between the President of the ASCA and the President of the National Congress for Fathers and Children was based on a constitutionally protected interest.  Additionally, the

---

[8] The pleadings indicate that Blackston is the President of the National Congress for Fathers and Children.

13

plaintiffs' mere, factually unsupported belief[9] that the ASCA approved of the child support schedule prior to the Advisory Committee meeting is purely speculative and fails to allege a constitutional violation.   The court therefore concludes that these claims should be dismissed because the plaintiffs' assertions fail to state a claim upon which relief may be granted.  *See* FED.R.CIV.P. 12(b)(6).

### (c)  *A Cross-Section of Committee Members*

The plaintiffs assert that the defendants violated the Equal Protection Clause by failing to assemble a proper quorum for the March and April 2004 meetings.  Specifically, they assert that the defendants "padded the Committee with unqualified individuals," such as lawyers, judges, and DHR employees, and, therefore, failed to "select a cross section of committee members from all entities concerned with updating child support guidelines." (Pls' Comp. at 46.)  The plaintiffs have failed to allege facts demonstrating that the reasons for the defendants' actions were based on a constitutionally protected interest. Consequently, the defendants' motion to dismiss this Equal Protection claim should be granted.  *See* FED.R.CIV.P. 12(b)(6).

### (d)   *The Failure to Convene Meetings*

The plaintiffs assert that the defendants violated their right to equal protection by failing to convene a Committee meeting within three months of September 25, 2003, and

---

[9]All of the defendants, with the exception of the State of Alabama, are persons within the meaning of § 1983 and are state officials who have asserted their absolute immunity in their official capacity and their qualified immunity in their individual capacity.  Consequently, the plaintiffs have the burden of a heightened pleading requirement which their mere beliefs are insufficient to support. *See e.g., Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir.  2004).

failing to convene Committee meetings and public hearings within six months, in violation of the settlement agreement.  Again, the plaintiffs fail to allege facts demonstrating that they were treated differently from others who were similarly situated and that the reason for the differential treatment was based on a constitutionally protected interest.  Furthermore, although the plaintiffs couch their argument in terms of equal protection, their assertion is more properly construed as a claim that the defendants breached the terms of the settlement agreement.  Consequently, the motion to dismiss the plaintiffs' claim that the defendants violated the Equal Protection Clause by failing to convene public meetings within a certain period of time should be granted.

### (e) Conclusion To Equal Protection Claims Discussion

The court has discussed seriatim each of the plaintiffs' separate Equal Protection claims and concluded they fail to state a claim on which relief may be granted.  In the ususal circumstances, the court would be constrained to afford the plaintiffs an opportunity to amend their complaint because the law generally does not countenance dismissal for mere pleading deficiencies.  However, this court has extensive experience with the plaintiffs and their continued challenges to the process, procedures and substance of the work of the Advisory Committee on Child Support.  Nothing in the record before the court supports in any way the notion that any alleged differential treatment of the plaintiffs or the creation or application of the child support guidelines is based on race, religion, national origin, poverty or some other constitutionally protected interest within the meaning of the Equal Protection

Clause.  Under these unique circumstances, the court finds that there is no need to permit the plaintiffs to amend their Equal Protection claims which fail is a matter of law.

**(2)    Due Process**

The plaintiffs assert that the defendants violated the Due Process Clause by secretly contracting with Policy Studies in violation of the 1995 and 2003 settlement agreements. Specifically, the plaintiffs assert that the defendants failed to "solicit comparable entities" or hold a meeting or public hearing regarding the choice of an appropriate vendor in violation of the settlement agreement.  The defendants argue that the plaintiffs' assertion should be dismissed because there is no "fundamental right" to choose vendors and that they are entitled to absolute legislative immunity.

The court concludes that the plaintiffs' Due Process claim is merely an attempt to frame  as a constitutional violation their argument that the defendants violated the terms of the 1995 and 2003 settlement agreements.  The alleged breach of the contractual settlement agreement does not in this case implicate the plaintiffs' substantive or procedural due process rights especially when the plaintiffs have a complete remedy through the contempt processes of the court as discussed elsewhere in this recommendation.  *See Medical Laundry Service v. Bd. of Trustees*, 840 F.2d 840, 842 n. 12 (11th Cir.  1988).  In addition as the defendants point out, to the extent the plaintiffs challenge the actions of the defendants with respect to their roles in promulgating the child support guidelines, the defendants are entitled to absolute legislative immunity.  *See McFarland v. Folsom*, 854 F.Supp. 862, 875-76 (M.D.

Ala. 1994).  Consequently, the defendants' motion to dismiss this claim should be granted.

## C.  Contempt and Breach of Contract

The plaintiffs assert that the defendants are in breach of contract and should be held in contempt of this court's order in *Blackston v. State of Alabama*, No. 2:99cv295-A (M.D. Ala. 2003) for violating the terms of the 2003 settlement agreement.  The defendants argue that this court should not consider the plaintiffs' state law breach of contract claims in this proceeding because there is no federal question and that the plaintiffs' attempt to enforce the court's order to abide by the terms of the 2003 agreement can be challenged only in the previous case as a contempt action.  The plaintiffs contend that this court has jurisdiction over their claims because the parties stipulated that the settlement agreement could be enforced in a breach of contract action in state or federal court.

In its December 24, 2003 order, the court ordered that "[f]inal judgment is entered in accordance with the Settlement Agreement and Release, and the parties are ORDERED to abide by all terms of the Agreement."  (*Id.*)  While the parties may have agreed that the settlement agreement could be enforced through a breach of contract action in federal court, it is well settled that "parties cannot create federal jurisdiction by agreement."  *Kirkland v. Midland Mort. Co.*, 243 F.3d 1277, 1279 n. 1 (11th Cir. 2001); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).  *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 n. 17 (1951) (quoting *People's Bank v. Calhoun*, 102 U.S. 256, 260-61 (1880)) ("It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of

the United States jurisdiction to hear and decide a case.").    Thus, the parties' agreement[10] that any breach of contract claims may be raised in federal court does not itself create an independent federal action for breach of contract.

Nonetheless, there are circumstances in which parties may seek to *enforce* a settlement agreement in federal court.   "[I]f the parties' obligation to comply with the terms of the settlement agreement [are] made part of the order of dismissal . . . a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

> If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so.  When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), . . . the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order.  Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) . . . we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree.  Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

Plainly, the court in *Blackston v. State of Alabama*, No. 2:99cv295-A (M.D. Ala. 2003), "embodied the settlement contract in its dismissal order" by ordering the parties to

---

[10]For the purpose of this discussion, the court will assume without deciding that the parties did agree that a breach of their settlement agreement was enforceable in this court.

"abide by the terms of the Agreement . . . " and incorporating the agreement into the final judgment. *See Kokkonen*, *supra*. Because compliance with the agreement is one of the terms of the order, the plaintiffs may challenge the alleged violations of the 2003 settlement agreement in the previous *Blackston* case, however not in a separate lawsuit.

Injunctions, including consent decrees, are enforced through the trial court's civil contempt power. *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000); *In re Grand Jury Proceedings*, 142 F.3d 1416, 1424 (11th Cir. 1998); *Newman v. Alabama*, 683 F.2d 1312, 1317-19 (11th Cir. 1982). "[T]he filing of a civil contempt petition is not the institution of an independent proceeding but is part of the original cause." *Hodgson v. Hotard*, 436 F.2d 1110, 1114 (5th Cir. 1971).[11]  Thus, the law of this circuit requires that the plaintiffs' action to enforce the court's order to abide by the terms of the 2003 agreement must be filed as a contempt motion in *Blackston v. State of Alabama*, No. 2:99cv295-A (M.D. Ala. 2003),[12] rather than as a claim in the present action.[13]  *See Hodgson*, *supra*; *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 370 n. 38 (1947) (noting that claims of civil contempt are

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

[12] The Supreme Court's opinion in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994), makes clear that a court may assert jurisdiction in order to enforce the terms of a consent decree after a case is closed. *See Florida Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 -1299 (11th Cir. 2001).

[13] To the extent the plaintiffs assert that the defendants violated the terms of the 1995 settlement agreement, the court concludes that their contempt claim should be raised in *Blackston v. State of Alabama*, No. 2:93cv623-H, or as a breach of contract claim in an appropriate state court.

"between the original parties, and are instituted and tried as part of the main cause"); *Florida Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1299 (11th Cir. 2001) (Improper to require plaintiff to file a new lawsuit to to seek enforcement of a specific provision of an existing consent decree); *Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003) (holding that the appropriate course of action for plaintiffs was to move the court to issue an order for the defendants to show cause why they should not be held in civil contempt and sanctioned). Consequently, the plaintiffs' breach of contract claims and their contention that the defendants should be held in contempt for violating the terms of the settlement agreement should be dismissed without prejudice to afford the plaintiffs an opportunity to raise these contentions in the original action.[14]

### D.  The Federal Contracts Clause

The plaintiffs assert that the defendants violated the federal Contracts Clause by violating the terms of the settlement agreement.  The defendants correctly argue that the plaintiffs' contention should be dismissed because the Contracts Clause only protects contractual obligations from impairment be a law passed by the State.

The Contracts Clause provides that "no State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. Art. I,  § 10.  In determining whether a violation of the Contracts Clause has occurred, the court first "ask[s] whether the change in state law has operated as a substantial impairment of a contractual relationship."  *Gen. Motors Corp. v.*

---

[14] In the alternative, the plaintiffs may pursue their breach of contract claims in state court.

*Romein*, 503 U.S. 181, 186 (1992) (citations omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* The plaintiffs have failed to allege facts demonstrating that the State passed any law which impaired the plaintiffs' contractual relationship with another party. The court therefore concludes that the plaintiffs' federal Contracts Clause claim[15] should be dismissed.

### E.  The Constitutionality of Alabama's Child Support Guidelines

The defendants assert that the plaintiffs are barred by the doctrine of res judicata from bringing their claim that the Alabama Child Support Guidelines are unconstitutional and are violative of 45 C.F.R. § 302.56(h) because the defendants in this case are identical to those in a case which was previously dismissed by this court, and the claim could have been brought in the previous lawsuit. The court agrees.

In *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541 (11th Cir. 1986), the Court summarized the doctrine of res judicata as follows:

> Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit. ... In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.

---

[15]This claim in reality is simply another variant of the plaintiffs' breach of contract action which, as exhaustively noted, must be pursued as a contempt.

*I.A. Durbin*, 793 F.2d at 1549 (citations omitted).

**(1)     A Final Judgment by a Court of Competent Jurisdiction**

In *Blackston v. State of Alabama*, No. 2:99cv295-A (M.D. Ala. 2003), the plaintiffs sued the State of Alabama and three public officials for alleged violations arising from the operation of the Alabama Supreme Court's Advisory Committee on Child Support Guidelines.  On December 24, 2003, the Court ordered that final judgment be entered in accordance with the parties' settlement agreement and dismissed the case with prejudice. (*Id.*)  Thus, it is clear that the court's dismissal of the case was a final judgment on the merits and that the decision was rendered by a court of competent jurisdiction.

**(2)     Identical Parties**

Parties are "identical" for purposes of res judicata when they are the same or in privity with one another.  *NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990).  In *Blackston v. State of Alabama*, No. 2:99cv295-A (M.D. Ala. 2003), the plaintiffs named the State of Alabama and the following members of the Advisory Committee as defendants: Richard Durrough, Chairman of the Advisory Committee; Frank Gregory and Rich Hobson,[16] former directors of the Administrative Office of Courts; Bob Maddox, employee of the Administrative Office of Courts; and Peggy Walker, Planning and Research Director for the Administrative Office of Courts.  In the present lawsuit, the plaintiffs name the State of

---

[16] Rich Hobson was appointed as the Director of the AOC during the pendency of the case and, therefore, replaced Frank Gregory as a defendant.

Alabama and the following members of the Advisory Committee as defendants:  Gorman

Houston, former Acting Chief Justice of the Alabama Supreme Court;  L.E. Gosa, Chairman

of the Advisory Committee; Randy Helms,  Director of the Administrative Office of Courts;

Alex Jackson, staff attorney for the Alabama Supreme Court; and Bob Maddox, an employee

of the Administrative Office of Courts.  Thus, the defendants in the present lawsuit are the

same as, or in privity with, the defendants in the previous case.

**(3)     The Same Cause of Action**

In *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992), the Court

summarized the law regarding when a cause of action is the same for purposes of res judicata

as follows:

> In this circuit, the determination of whether the causes of action
> in two proceedings are the same is governed by whether the
> primary right and duty are the same. *Hunt,* 891 F.2d at 1561
> (quoting *Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052
> (5th Cir.1979)); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793
> F.2d 1541, 1549 (11th Cir.1986). The test is one of substance,
> not form. *I.A. Durbin,* 793 F.2d at 1549. Res judicata applies
> "not only to the precise legal theory presented in the previous
> litigation, but to all legal theories and claims arising out of the
> same 'operative nucleus of fact.' " *Hunt,* 891 F.2d at 1561
> (despite variations in legal theories used and remedies sought,
> second suit barred because wrongful act in both cases was flying
> Confederate flag atop state capitol) (quoting *Olmstead v. Amoco
> Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984)); *Jaffree v. Wallace,*
> 837 F.2d 1461, 1468 (11th Cir.1988) (second suit barred
> because "[b]oth cases raised first amendment (free exercise and
> establishment clause) challenges to use of textbooks and
> teachings on various subjects"); *Nilsen v. City of Moss Point,*
> 701 F.2d 556, 560 (5th Cir.1983) (section 1983 action against
> city that refused to hire plaintiff as firefighter due to her sex

precluded by earlier Title VII action on same facts).
*Manning v. City of Auburn*, 953 F.2d at 1358-59.

The plaintiffs specifically assert that the Alabama Child Support Guidelines violate the Equal Protection Clause because the Guidelines "place all the burden of supporting children on the non-custodial parent through threats of incarceration" and "transfer wealth from the non-custodial parent to the custodial parent."  (Pls' Comp. at 55-56.)  In addition, the plaintiffs contend that the guidelines violate the Due Process Clause and 45 C.F.R. § 302.56(e) because they contain "irrebuttable presumptions," the "income shares model" is deficient, and the state guidelines do not conform with federal guidelines.  The Alabama Child Support Guidelines are set forth in ALA. R. JUD. ADMIN. 32, which was adopted in 1987 and amended in 1989 and 1993.  The Child Support Information Sheet was added as ALA. R. JUD. ADMIN. 32.1 in 1998, and the Schedule of Basic Child Support Obligations, ALA. R. JUD. ADMIN. 32 appendix, was amended in 1993.  Thus, the Guidelines at issue were in effect at the time the plaintiffs filed their lawsuit in 1999.  Therefore, the plaintiffs could have raised the same claim challenging the constitutionality of the Alabama Child Support Guidelines and their claim that the guidelines violate federal regulations in the prior lawsuit.  The court therefore concludes that the plaintiffs' claims concerning the Alabama Child Support Guidelines in this case arise from the same "operative nucleus of fact" as presented in the previous lawsuit.  *Hunt*, *supra*.  Consequently, the plaintiffs' due process and equal protection claims in the present action are barred by the doctrine of res judicata and should

24

be dismissed.

## F.  The State of Alabama

The State of Alabama requests that it be dismissed because it is absolutely immune under the Eleventh Amendment because it has not consented to be sued.  The court agrees, *see Kentucky v. Graham*, 473 U.S.159 (1985); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curium), and the State should be dismissed with prejudice.

## G.  The State Law Claims

The plaintiffs claim that the defendants violated several state statutes and the Alabama Constitution of 1901 and committed violations of both state tort and contract law.[17]  If the federal claims over which the court has original jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over state law claims.  *See* 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002).  In view of this court's determination that the federal claims presented in the plaintiffs' complaint should be dismissed, the court concludes that their supplemental state law claims should also be dismissed.  *Id.*

## H.  Pending Motions

On March 21, 2005, the plaintiffs filed a motion for contempt and for emergency

---

[17]The state law claims are a violation of Article I, Sections 6 & 13 of the Alabama Constitution; violations of Alabama's Open Meetings Law, Ala. Code § 13A-14-2 and Alabama's Open Records Law, Ala. Code § 36-12-40; fraud; bad faith; and intentional interference with contractual relations.

injunctive relief (doc. # 45); on March 21, 2005, the plaintiffs filed a second motion for contempt and emergency injunctive relief (doc. # 47); and on April 5, 2005, the plaintiffs filed a motion to expedite the motions for contempt and for emergency injunctive relief. (doc. # 52)  Based on the court's conclusion that the defendants' motion to dismiss is due to be granted, these motions are due to be denied.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge:

(1)     That the plaintiffs' state law claims be DISMISSED without prejudice.

(2)      That the defendants' motion to dismiss (doc. # 23) be GRANTED as follows:

(a)     That the plaintiffs' claims that the defendants are in contempt of court for violating the court's order to abide by the terms of the settlement agreement be DISMISSED without prejudice.

(b)     That the plaintiffs' remaining claims be DISMISSED with prejudice.

(3)     That the costs of this proceeding be taxed against the plaintiff.

(4)     That the plaintiffs' motion for contempt and for emergency injunctive relief (doc. # 45), the plaintiffs motion for contempt and emergency injunctive relief (doc. # 47); and the plaintiffsmotion to expedite the motions for contempt and for emergency injunctive relief. (doc. # 52) be denied.

It is further

ORDERED that the parties shall file any objections to this Recommendation be filed on or before April 25, 2005.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

Done this 12th day of April, 2005.


        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE